IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2010

## MARICO FINNIE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 00-10540-56     W. Mark Ward, Judge**

**No. W2009-00990-CCA-R3-PC  - Filed September 15, 2010**

The petitioner, Marico Finnie, appeals from the post-conviction court's order granting him partial post-conviction relief in the form of a delayed appeal from his multiple aggravated rape, aggravated robbery, and facilitation of aggravated rape convictions. He argues that because his successful post-conviction claim was based on appellate counsel's ineffective assistance in not raising meritorious issues in his direct appeal, and he never requested a delayed appeal, the court instead should have vacated his convictions and remanded for new trials. The State agrees that a delayed appeal is not the appropriate avenue of relief but contends that appellate counsel's deficiency resulted in prejudice only with respect to the consecutive sentencing imposed and in two of the aggravated rape convictions where the State failed to make a proper election of offenses. The State, therefore, argues that the petitioner should be afforded new trials for the two aggravated rape convictions as well as a new sentencing hearing for all the convictions. We agree with the State that a delayed appeal is not the appropriate relief but disagree with its contention that the petitioner suffered prejudice in only two of his rape cases as a result of counsel's deficient performance in failing to raise the election issue on appeal. We further disagree with both the petitioner's and the State's position that the trial court failed to make sufficient findings in support of the imposition of consecutive sentencing or that counsel was ineffective for failing to raise this issue on appeal. Accordingly, we reverse the judgment of the post-conviction court in part, vacate the petitioner's convictions in indictment numbers 00-10546, 00-10542, 00-10554, and 00-10545, and remand for new trials for those offenses.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed in Part and Remanded**

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and D. KELLY THOMAS, JR., JJ., joined.

Robert Brooks, Memphis, Tennessee, for the appellant, Marico Finnie.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Hagerman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS and PROCEDURAL HISTORY

This case arises out of the petitioner's participation with an accomplice, Anthony Allen, in a series of robberies and rapes committed against employees of three Memphis adult entertainment establishments. The petitioner was charged in fourteen separate indictments with multiple counts of aggravated rape and aggravated robbery involving multiple victims. The indictments were consolidated for trial, and the petitioner was subsequently convicted by a Shelby County jury of four counts of aggravated rape, a Class A felony, seven counts of aggravated robbery, a Class B felony, and three counts of facilitation of aggravated rape, a Class B felony.[1] Finding the petitioner to be a dangerous offender, the trial court ordered that some of his sentences be served consecutively, which resulted in the petitioner's receiving an effective sentence of 128 years in the Department of Correction. State v. Marico Finnie, No. W2004-02166-CCA-R3-CD, 2005 WL 1606358, at *1 (Tenn. Crim. App. July 8, 2005), perm. to appeal denied (Tenn. Dec. 5, 2005).

The only issue the petitioner raised in his direct appeal was whether the trial court's imposition of consecutive sentencing violated his Sixth Amendment right to a trial by jury under Blakely v. Washington, 542 U.S. 296 (2004). Id. Our direct appeal opinion contains the following brief summary of the facts presented at his trial:

> This case relates to the [petitioner's] spree of raping and robbing lingerie models with his accomplice, Anthony Allen. The record reflects that on December 14, 1999, the [petitioner] and Allen went to Brandi's Fashions where they initially posed as customers and then robbed the lingerie models and other employees of their possessions and money at gunpoint. They took the victims' driver's licenses and told them that they would track them down and kill them if anybody reported the crime to police. The [petitioner] and

---

[1] Each indictment charging the petitioner with aggravated rape included two counts involving the same victim. Count one alleged that the petitioner and Allen unlawfully, intentionally, and forcibly sexually penetrated the victim while armed with a weapon, and count two charged that the petitioner and Allen unlawfully, intentionally, and forcibly sexually penetrated the victim while being aided and abetted one by the other. In each case, the jury convicted the petitioner of the same offense (either aggravated rape or facilitation of aggravated rape) in each count of the indictment. The trial court then merged the convictions involving the same victim into a single judgment of conviction.

-2-

Allen then raped two of the lingerie models. Before leaving, the [petitioner] and Allen preached to the victims about leading immoral lives and attending church and forced the victims to sing Christmas carols.

On December 20, 1999, the [petitioner] and Allen went to Southern Belles, another lingerie business. As soon as an employee of Southern Belles opened the door, Mr. Allen placed a gun to her head and ordered all of the employees to undress and get on the floor. The [petitioner] and Allen then robbed the victims of their possessions and money and took their driver's licenses and identity cards, telling the victims they would kill them if they called the police. They also raped the victims, preached to them about their lifestyles, and forced them to sing Christmas carols until they left.

On January 14, 2000, the [petitioner] and Allen went to Club Flamingo, an exotic dancing club. They asked two of the exotic dancers to perform at a bachelor party, and the dancers agreed. As the dancers left the club, the [petitioner] and Allen abducted them and drove to the Discovery Inn where they rented a room. The [petitioner] and Allen then raped the victims, preached to them about their lifestyles, and left.

Based on this evidence, the jury convicted the [petitioner], and the trial court conducted a sentencing hearing. At the sentencing hearing, the trial court found the [petitioner] was a dangerous offender to justify its imposition of consecutive sentencing.

Marico Finnie, 2005 WL 1606358, at *1.

Additional evidence presented at trial was that the petitioner and Allen forced their rape victims to strip, took the victims' identification cards, and threatened to return to kill the victims and their families if they reported the crimes. The petitioner's counsel employed two alternate strategies at trial, attempting both to cast doubt on the victims' identifications of the petitioner as one of the perpetrators and to suggest that the victims, some of whom admitted to having engaged in prostitution, were retaliating against the petitioner and Allen for their failure to pay them for contractual "fantasy" rape and robbery sexual encounters.

Allen, who was tried separately, was convicted by a Shelby County jury of eight counts of aggravated rape, one count of facilitation of aggravated rape, and seven counts of aggravated robbery, and received an effective sentence of 124 years in the Department of Correction. See State v. Anthony Allen, No. W2004-01085-CCA-R3-CD, 2005 WL 1606350, at *3 (Tenn. Crim. App. July 8, 2005), perm. to appeal denied (Tenn. Dec. 19,

2005). Allen raised five issues on appeal, including whether the State erred by not electing the offense for which conviction was sought in two case numbers and whether the trial court erred in consolidating the indictments and by imposing consecutive sentencing under the dangerous offender criterion of the statute without making the required Wilkerson findings. Consequently, our direct appeal opinion in Allen contains a more lengthy summary of the facts surrounding the convictions:

> Following a hearing on the State's motion, the trial court consolidated for one jury trial fifteen indictments alleging the defendant's participation in the aggravated rape and aggravated robbery of eight victims in four separate incidents. The following is an account of the events that transpired.

> **December 14, 1999**

> In the first incident, the defendant and his co-defendant, Marico Finnie, entered Brandy's in Memphis. Brandy's is an establishment frequented by men requesting lady employees to model lingerie in private rooms. Four women were present at the time the defendant and Finnie entered, including A.C. and R.B. After briefly discussing pricing with the ladies, the defendant pulled a gun from his pants and held it to A.C.'s hand while Finnie proceeded to kick in doors and search for any other women that may have been hiding. After demanding money and rummaging through the women's bags and purses, the defendant and Finnie forced the women into one room and directed them to sing Christmas carols. The defendant held a gun on them while Finnie raped R.B. in an adjoining room. The defendant then raped A.C. at gunpoint while Finnie searched her pockets. Before the men left, Finnie "preach[ed]" to the women concerning their lifestyles.

> Subsequent to the events, A.C. and R.B. were taken to the Memphis Sexual Assault Resource Center (MSARC). A.C. complained of abdominal pain and tenderness, but showed no genital trauma during her examination. R.B.'s exam also revealed a lack of genital trauma but indicated that her left jaw was reddened.

> At trial, the defendant admitted that he and Finnie had been drinking when they decided to go to Brandy's on December 14, 1999. However, the defendant denied raping A.C. He testified that, upon entering Brandy's, Finnie disappeared. The defendant stated that, when he found Finnie, "[a] girl was on the bed and [Finnie] had his pants down and he was punching her on her left side of her face." The defendant stated that Finnie then threw his gun to

-4-

him, which the defendant admitted to holding by his leg.  The defendant stated that, before he and Finnie left, Finnie made the women sing Christmas songs, went around kicking in doors, and "preach[ed]" to the girls, telling them "[y]'all are whores, y'all are no good." The defendant admitted that he threw the women's stolen bags into the truck as he and Finnie left.

**December 20, 1999**

In the second incident, the defendant and Finnie entered Southern Belles with guns drawn.  The five women present at the time included H.W., F.C., and M.B. The men forced the women to disrobe and kneel on the floor with their heads face down into a couch.  After robbing the women, the defendant and Finnie began to fondle them.  One of the men stuck his fingers into the vagina of M.B. as she was kneeling over the couch.  F.C. was ordered to lie on the floor with her legs spread open and raped.  H.W. was ordered to "suck on [the defendant's] penis" while the defendant pointed his gun at her head.  After forcing oral sex, the defendant vaginally raped H.W. with the gun pointed at her chest.  The women were then tied up and robbed of their money, jewelry, and personal possessions.  The women were also directed to sing Christmas carols.  Before the defendant and Finnie left, they "preached" to the women and threatened to kill them if they reported the incident to police.

The victims in this incident were also treated at MSARC.  The examinations indicated that F.C. had red marks on her wrists, M.B. had swelling and redness on her right forearm, and that H.W. had reddened buttocks.  However, no trauma was present in any of the women's genital or anal areas.  From the examination of F.C., Chad B. Johnson of the Tennessee Bureau of Investigation was later able to positively match the DNA profile of the semen found to the defendant's DNA profile.

Laverne Jones of the Memphis Police Department was called to Southern Belles following the incident.  Although she was unsuccessful in collecting fingerprints, Jones did submit several items for chemical evaluation.  Among these items were two belts used to tie the girls up, a bottle of cocoa butter, and some condom packages.

Frances Carpenter, a chemical processor with the Memphis Police Department, discovered one "print of value" among the items brought back for chemical evaluation.  Carpenter then sent the print to Nathan Gathright, a latent fingerprint examiner with the Memphis Police Department, who

matched the print to the defendant.

At trial, the defendant admitted that he and Finnie were at Southern Belles on December 20, 1999. The defendant testified that Finnie again disappeared as they entered the establishment. He stated that, Finnie later came in and went down the hall with a girl, stating, "Hold [my gun] for me, I'll be right back." The defendant testified that, as he awaited Finnie, he paid F.C. $20 for a massage, which turned into oral sex. The defendant testified that he then gave F.C. $80 more for sex. The defendant testified that, as he was having sex with F.C., a girl ran into the room covered in blood. He stated that Finnie then ordered the girls to sing Jingle Bells as they were tied up and their clothes were soaked in a shower. The defendant testified that Finnie also dumped out their bags and confiscated their driver's licenses. The defendant admitted to tying up one of the girls, but denied that he raped or robbed anyone.

### January 14, 2000

In the final incident, the defendant and Finnie entered Flamingo Club in Memphis. While at the club, the men requested a dancer, R.L., and her friend, C.G., to accompany them for a private party. Once the women entered the defendant's car, the defendant and Finnie drew guns. The defendant then drove to a nearby hotel room, where he and Finnie ordered the women to disrobe, rifled through their belongings, and collected their money. The defendant then ordered R.L. to perform oral sex, under the instruction that, if she bit him or "sucked it too hard," he would shoot her. When the defendant was satisfied with the oral sex, he began to have vaginal sex with R.L., keeping the gun pointed at her head. The defendant and Finnie then ran a tub full of water and submerged the women's belongings.

At trial, the defendant denied that he raped R.L. Rather, he testified that he gave R.L. $125 and made an agreement with both women to accompany him and Finnie to the hotel room for sex. The defendant testified that, as Finnie was having sex with C.G. on the bed, R.L. began to voluntarily give him oral sex. The defendant stated that Finnie soon became upset and began cussing and arguing with C.G. The defendant testified that Finnie then dumped out the women's purses and took their driver's licenses.

**Arrest**

On January 15, 2000, after being released from the hospital, R.L. pulled into a gas station in North Memphis while on the way to visit her brother. At the gas station, she spotted the defendant and subsequently alerted the police. Thereafter, the police arrested the defendant.

After his arrest, the defendant gave a statement, admitting his involvement in the incidents, but denying guilt as to all charges. The defendant was also independently identified by numerous victims in a photographic lineup. During the course of these events, Finnie was implicated as a suspect, and the police proceeded to obtain consent to search his residence and vehicle. The police found a handgun and various items belonging to the victims in this case, including two driver's licenses, a cellular phone, and a pager.

Id. at *1-3 (footnotes omitted).

In Allen's case, we concluded that the trial court erred by consolidating the cases for trial but that the error was harmless because the proof against Allen, which included his admissions that he had participated in each of the incidents, was overwhelming. Id. at * 5-6. We further concluded that the trial court erred by not making sufficient findings in support of its imposition of consecutive sentencing, id. at *8, and by not requiring the State to make an appropriate election of offenses in one of the aggravated rape cases where there was proof of more than one act of penetration. Id. at *11-13. We, therefore, reversed that aggravated rape conviction and remanded to the trial court for a new trial for that offense and for a new sentencing hearing to reconsider whether its order of consecutive sentencing was appropriate. Id. at *15.

On December 4, 2006, the petitioner in this case filed a *pro se* petition for post-conviction relief in which he raised a claim of ineffective assistance of counsel. Post-conviction counsel was subsequently appointed and an amended petition filed in which the petitioner alleged ineffective assistance of counsel at trial and on appeal based, among other things, on counsel's failure to request that the State elect offenses at trial and to raise on direct appeal issues relating to the trial court's consolidation of the indictments, the State's failure to properly elect offenses, and the trial court's failure to make appropriate findings in support of its order of consecutive sentencing.

We confine our summary of the evidentiary hearing testimony, held on four separate dates in 2008, to the evidence that is relevant to this appeal. At the January 3 and August 8

hearings, the attorney who represented the petitioner both at trial and on appeal testified that he had been practicing law since 1991 with approximately eighty-five percent of his practice devoted to criminal defense. He said he argued vigorously against the State's motion for permissive joinder of the indictments but was "unable to overcome the concept of pattern." He stated that he included the issue in his motion for new trial, although he did not expect to prevail. He did not raise the issue on direct appeal because he did not think it had any real merit and he wanted to limit the issues before the appellate court to ones that were winnable.

Counsel testified that he did not ask that the State be required to elect offenses and did not raise the State's failure to do so as an issue on appeal because, in his view, "the concept of election was raised with the whole concept of the pattern." He believed, therefore, that the trial court's ruling against him with respect to the consolidation issue included a ruling on the election of offenses: "But what I'm saying is that the election was inclusive in our thinking, at least my thinking, to have separate trials, and when the pattern argument prevailed, so with it went the whole election concept." He testified that he raised the trial court's imposition of consecutive sentences as an issue on appeal.

On cross-examination, counsel agreed that one of his strategies at trial was to challenge the victims' identifications of the petitioner as a participant in the crimes. On redirect examination, he said that he could not recall why he had challenged the trial court's imposition of consecutive sentencing based solely on the Blakely argument.

On April 9, 2009, the post-conviction court entered an order denying in part and granting in part the petition. Among other things, the court found that counsel was deficient at trial for failing to ask for an election of offenses but that the petitioner was unable to show that he had been prejudiced as a result. The court further found that counsel was deficient for not raising the election issue on appeal and that counsel's deficiency resulted in prejudice in four cases: indictment numbers 00-10546, 00-10554, 00-10542, and 00-10545. Finally, the court found that counsel was deficient in his performance, resulting in prejudice to the petitioner's direct appeal, for not raising the consolidation issue, and for not challenging on appeal the trial court's failure to make the additional findings required for the imposition of consecutive sentencing under the dangerous offender criterion of the consecutive sentencing statute. The court therefore granted the petition "on the grounds of [the petitioner's claim] of ineffective assistance of appellate counsel," "granted [the petitioner] a new appeal in the form of a delayed appeal" and authorized the petitioner "to file another motion for new trial" within thirty days of the entry of the post-conviction court's order. This appeal followed.

# ANALYSIS

## I.  Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices

were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The same principles apply in determining the effectiveness of trial and appellate counsel. Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995). In order to establish the ineffective assistance of appellate counsel, a petitioner must prove that (1) appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) there was a reasonable probability that the petitioner's appeal would have been successful before the state's highest court had appellate counsel not rendered deficient performance. See, e.g., Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Mayo v. Henderson, 13 F.3d 528, 533-34 (2d Cir. 1994); but see Darryl Lee Elkins v. State, No. E2005-02153-CCA-R3-PC, 2008 WL 65329, at *9 (Tenn. Crim. App. Jan. 7, 2008), perm. to appeal denied (Tenn. May 27, 2008) (Tipton, P.J. concurring) (concluding that proper standard of prejudice for ineffective assistance of appellate counsel claims is the same as that for ineffective assistance of trial counsel claims, that is, whether a reasonable probability exists that, but for counsel's deficiency, the outcome of the trial would have been different).

Counsel does not have a constitutional obligation to raise every conceivable argument which might be made on appeal. Id. (citing King v. State, 989 S.W.2d 319, 334 (Tenn. 1999)). The determination of which issues to present on appeal is a matter addressed to the professional judgment and sound discretion of appellate counsel. Porterfield v. State, 897 S.W.2d 672, 678 (Tenn. 1995). "[I]neffectiveness is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal, primarily because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel." Kennath Henderson v. State, No. W2003-01545-CCA-R3-PD, 2005 WL 1541855, at *44 (Tenn. Crim. App. June 28, 2005), perm. to appeal denied (Tenn. Dec. 5, 2005). To show that counsel was ineffective for failing to raise an issue on direct appeal, the reviewing court must determine the merits of the issue. Carpenter v. State, 126 S.W.3d 879, 887 (Tenn. 2004) (citing Kimmelman v. Morrison, 477 U .S. 365, 375 (1986)).

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure

to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

## II. Claims of Ineffective Assistance of Appellate Counsel

### A. Consolidation of Indictments

Relying in large part on this court's decision in Anthony Allen, 2005 WL 1606350, the post-conviction court found that counsel was deficient for not challenging on appeal the consolidation of the petitioner's indictments. The court further found that counsel's failure to raise the issue prejudiced the outcome of the petitioner's appeal on the basis that the appellate court would not have been likely to view the error as harmless, as in Allen's case, because the petitioner, unlike Allen, did not admit his involvement in the crimes. The post-conviction court's order states in relevant part:

> As mentioned, with regard to this issue the Court of Criminal Appeals found that the trial judge erred in his analysis of this issue in the trial court and had abused his discretion in failing to sever the offenses. However, the Court also concluded that the error in consolidating the offenses was harmless. The Court concluded that the evidence was so overwhelming that the co-defendant would have been convicted of all the offenses even if tried severally. In making such a conclusion, the Court of Criminal Appeals specifically relied, among other things, on the fact that Allen had provided written confessions of his involvement in all of the episodes. In addition, although he denied raping the women, he did admit to tying up at least one victim, having a firearm at various times and robbing at least one of the victims. Significantly, none of these facts are present in Petitioner's case. . . . Applying the reasonable probability standard, this Court does conclude that there is a reasonable probability that the Petitioner would have received relief if this issue had been raised on appeal. Accordingly, Petitioner is entitled to a new appeal in the form of a delayed appeal.

Tennessee Rule of Criminal Procedure 8(b) provides that "[t]wo or more offenses may be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or consolidated pursuant to Rule 13, if: (1) the offenses constitute parts of a common scheme or plan; or (2) they are of the same or similar character." Tennessee Rule of Criminal Procedure 13(a) provides that "[t]he court may order consolidation for trial of two or more indictments, presentments, or informations if the offenses and all defendants could have been joined in a single indictment, presentment, or information pursuant to Rule 8." Finally, Tennessee Rule of Criminal Procedure 14(b)(1) provides that " [i]f two or more

offenses are joined or consolidated for trial pursuant to Rule 8(b), the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others."

"Decisions concerning consolidation and severance of offenses pursuant to [Tennessee] Rules of Criminal Procedure 8(b), 13 and 14(b)(1) will be reviewed for an abuse of discretion." State v. Denton, 149 S.W.3d 1, 12 (Tenn. 2004) (citations omitted). "An abuse of discretion in this context implies that the trial court applied an incorrect legal standard or reached a decision against logic or reasoning which caused an injustice to the complaining party." Id.

There are three categories of common scheme or plan evidence: (1) offenses that reveal a distinctive design or are so similar as to be considered "signature crimes"; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction. State v. Shirley, 6 S.W.3d 243, 248 (Tenn. 1999) (citing Neil P. Cohen et al., Tennessee Law of Evidence § 404.11, at 180 (3d ed. 1995)).

In this case, the State argued, and the trial court agreed, that the offenses were "signature crimes." Our supreme court has observed that "identity is usually the only relevant issue supporting admission of other offenses when the theory of the common scheme or plan is grounded upon a signature crime." State v. Moore, 6 S.W.3d 235, 239 (Tenn. 1999). However, "[b]efore multiple offenses may be said to reveal a distinctive design, and therefore give rise to an inference of identity, the 'modus operandi employed must be so unique and distinctive as to be like a signature.'" Id. at 240 (quoting State v. Carter, 714 S.W.2d 241, 245 (Tenn. 1986). That is, "the methods used in committing the offenses must have 'such unusual particularities that reasonable men can conclude that it would not likely be employed by different persons.'" Id. (quoting Harris v. State, 227 S.W.2d 8, 11 (Tenn. 1950)).

Based on our review of the record, we conclude that the trial court committed no error in consolidating the offenses. First, the methods the petitioner and Allen used to perpetrate the offenses -- posing as customers to gain access to the employees of adult entertainment establishments, taking their identity cards with the threat that they would return to kill them, forcing them to strip naked and then preaching to them about their immoral lifestyles after having raped them -- were so distinctive and unique as to make it unlikely that they would have been employed by different persons. Second, evidence of one offense would have been admissible at the trial of the other because the petitioner, unlike Allen, made identity a key issue at his trial by repeatedly challenging the victims' identifications of him as one of the perpetrators.

-12-

Given our view that the different offenses were properly consolidated for trial on the basis that they were "signature crimes" relevant and admissible to establish the petitioner's identity, we cannot conclude that counsel was deficient in his representation for failing to raise the consolidation issue on appeal or that the petitioner suffered any prejudice as a result. We conclude, therefore, that the petitioner is not entitled to post-conviction relief on the basis of this claim.

## B. Consecutive Sentencing

The post-conviction court, again relying on this court's opinion in Allen's direct appeal, found that counsel provided ineffective assistance on appeal for not challenging the trial court's imposition of consecutive sentencing on the basis that the court failed to make the additional findings required for consecutive sentencing as a dangerous offender. The post-conviction court's order states in pertinent part:

> Petitioner claims that his appellate counsel rendered ineffective assistance of counsel in failing to challenge the trial judge's order of consecutive sentencing for failure to comply with the requirements of State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995). As mentioned, the sole issue raised on appeal was a challenge to the consecutive sentencing under a theory that imposition of such a sentence by a judge violated the Sixth Amendment right to a jury trial. At the evidentiary hearing, [a]ppellate counsel testified that he had no recollection as to why he did not challenge the consecutive sentencing for failing to apply the Wilkerson criteria. Petitioner's co-defendant raised this issue in his separate direct appeal and the Court of Criminal Appeals remanded the case to the trial court for [a] new sentencing hearing. In order to justify consecutive sentencing based on a finding that the defendant is a dangerous offender, a trial judge must also make specific findings as required by Wilkerson. This is an elementary concept in the criminal law. In the present case, the trial judge made no such findings. Failure to raise this issue on direct appeal was not objectively reasonable and was deficient performance. Further, had this issue been raised there is a reasonable probability that Petitioner would have received relief on appeal. Accordingly, Petitioner is entitled to a new appeal in the form of a delayed appeal.

Tennessee Code Annotated section 40-35-115(b) provides that it is within the trial court's discretion to impose consecutive sentencing if it finds by a preponderance of the evidence that any one of a number of criteria applies, including that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code

Ann. § 40-35-115(b)(4) (2006). When a trial court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it is required to make further findings that the aggregate length of the defendant's sentence reasonably relates to the severity of his offenses and is necessary to protect the public from further criminal conduct of the defendant. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); Wilkerson, 905 S.W.2d at 937-38.

As an initial matter, we note that we observed in our direct appeal opinion, albeit in dicta, that we had no concerns with the trial court's imposition of consecutive sentencing in the petitioner's case, aside from our rejection of his Blakely argument. We wrote: "Accordingly, the defendant's reliance upon Blakely is misplaced. Otherwise, we see no problem with the trial court's imposition of consecutive sentences." Marico Finnie, 2005 WL 1606358, at *2.

In imposing consecutive sentences, the trial court stated, in pertinent part:

The Court finds that there was exceptional cruelty involved here and that further the Court will find that the defendant due to the nature of what went on in this trial is a dangerous offender.

I don't know how these things appear to most people. This Court finds that this is a very arrogant, horrible situation that occurred because it appeared that these people, both of these defendants, that went through both of these series of robberies, rapes and facilitations of aggravated rape were putting themselves in a situation where these victims . . . were people who were in and of themselves supposedly committing some form of crime by being involved in some sexual acts.

And I guess, you know, reading between the lines, that it would appear that the defendants didn't think that these women would come forward, but they did, and we went through these series of cases.

The Court has read . . . these matters strongly and appreciates the statements of counsel and the recommended sentencing. This Court feels that the -- I don't always do this, agree with you lawyers too much, but I feel that in this sense it would be fair to the victims, fair to the defendant and fair to the people . . . that have to live in this community or do live in this community and are residents of the State of Tennessee, that the Court would go along with the recommendation of the [S]tate.

And that's set out here already. It's been filed here. I can go over that with you if you want to, lawyers, but I see no need. It would be a total I think of -- totaling all consecutive and all concurrent times I think it's a total of 128 years.

Although the trial court could have been more precise and thorough in its language, we conclude that the above ruling, which references the "horrible" nature of the crimes and the "fairness" to the petitioner and the public of the aggregate 128-year term, contains sufficient findings to support the imposition of consecutive sentencing under the dangerous offender criterion of the statute. As such, we cannot agree that counsel was deficient for failing to raise a Wilkerson challenge to the trial court's imposition of consecutive sentencing as an issue on appeal or that the petitioner suffered any prejudice as a result. We conclude, therefore, that the petitioner is not entitled to post-conviction relief on the basis of this claim.

## C. Election of Offenses

The post-conviction court also found that counsel was deficient for failing to raise the election issue on appeal, which resulted in prejudice in the following cases: indictment number 00-10546, in which the petitioner was charged with the December 20, 1999, aggravated rape of H.W.[2] but convicted of the lesser-included offense of facilitation of aggravated rape; indictment number 00-10554, in which the petitioner was charged and convicted of the December 20, 1999, aggravated rape of F.C.; indictment number 00-10542, in which the petitioner was charged and convicted of the January 2000 aggravated rape of C.G.; and indictment number 00-10545, in which the petitioner was charged and convicted of the January 2000 aggravated rape of R.L.

We agree with the findings and conclusions of the post-conviction court on this issue. The Tennessee Constitution safeguards the right of a criminal defendant to a unanimous jury verdict before a conviction may be imposed. State v. Lemacks, 996 S.W.2d 166, 169-70 (Tenn. 1999). Thus, where the State presents evidence showing that more than one offense occurred, but the indictment is not specific for which offense the defendant is being tried, it is the responsibility of the trial court to require the State to elect which offense is being submitted to the jury. Id. at 170; see also State v. Brown, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991) ("[I]n cases involving evidence which shows a real potential that a conviction may occur as a result of different jurors concluding that the defendant committed different acts, each of which separately showing the commission of an offense, the trial court must augment the general unanimity instruction to insure that the jury understands its duty to agree

---

[2] In accordance with the policy of this court, we refer to these victims of sexual assault by their initials only.

unanimously to a particular set of facts.").

> The requirement of election serves numerous interests: it enables the defendant to prepare for the specific charge; it protects a defendant against double jeopardy; it enables the trial judge to review the weight of the evidence in its role as thirteenth juror; and it enables an appellate court to review the legal sufficiency of the evidence.  See Tidwell [v. State], 922 S.W.2d 497,] 500-01 [(Tenn. 1996)]; Burlison [v. State], 501 S.W.2d [801,] 803  [(Tenn. 1973)].  The most important interest served by election, however, is to ensure that the jurors deliberate over and render a verdict based on the same offense[.]

State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999).

The State concedes that counsel was deficient in his performance for not raising the State's failure to properly elect offenses as an issue on appeal and that counsel's deficiency resulted in prejudice in case numbers 00-10554 and 00-10542.  The State argues, however, that the petitioner suffered no prejudice in case number 00-10546, in which the petitioner was charged with the aggravated rape of H.W. but convicted of the lesser-included offense of facilitation, or in case number 00-10545, in which the petitioner was charged and convicted of the aggravated rape of R.L.

Specifically, the State asserts, with respect to the petitioner's conviction for facilitating the aggravated rape of H.W., that "[t]here is no requirement for specific intent in facilitation of aggravated rape; therefore, there is no need for the State to make an election of offenses."  The State also argues that the State made an effective election in closing argument with respect to this offense by explaining that H.W. "was digitally penetrated by the petitioner and Mr. Allen, but . . . had oral and vaginal sex with Mr. Allen." The State similarly argues, with respect to the petitioner's conviction for the aggravated rape of R.L., that it made an effective and adequate election in closing argument by making the distinction that the petitioner was being tried for his vaginal penetration of the victim.  We respectfully disagree.

At trial, H.W. testified that Allen first forced her to perform oral sex on him and then forced penile-vaginal intercourse with her.  She said that the petitioner did not rape her, but that he appeared to be in charge, with Allen looking to him for guidance and direction.  She never mentioned having been digitally penetrated by anyone, although her fellow victim, M.B., testified that the petitioner and Allen, after forcing the women to line up naked against the couch with their heads buried in the cushions, went down the line "sticking their fingers up" in the victims' vaginas.

-16-

R.L. testified that Allen first forced her to perform oral sex on him and then forced her to have "[r]egular sex" with him. She said that, afterwards, Allen "looked over" and told the petitioner that he should try her and that the petitioner then "had sex" with her. Specifically, she testified: "So I was having sex with one and the other one came up and put his penis in my mouth. And just all types of sex acts between the both of them."

The trial court instructed the jury that although the indictment named two defendants, the petitioner was the only one on trial at the time and was therefore "entitled to have his case decided on the evidence and the law which is applicable to him alone." The trial court also, however, instructed the jury on the petitioner's criminal responsibility for the facilitation of aggravated rape and its lesser-included offenses, as well as his criminal responsibility for the conduct of another, stating that "[t]he defendant is criminally responsible for an offense committed by the conduct of another if he acts with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission." Thus, the jury could have found the petitioner guilty based on his own acts or those of his accomplice. In H.W.'s case, in which the petitioner was convicted of facilitation of aggravated rape, two acts of penetration were described, each of which was committed by the petitioner's accomplice. Because the State failed to elect the specific act on which it was relying for the conviction, some of the jurors could have found the petitioner guilty for having facilitated the oral sex Allen forced the victim to perform, while others could have based their conviction on a finding that the petitioner facilitated Allen's forced penile-vaginal sexual encounter with the victim. In R.L.'s case, multiple acts of penetration were described, with some acts having been physically committed by the petitioner and others by his accomplice. Again, without an election of offenses, some of the jurors could have based their verdicts on one act of penetration, committed by either the petitioner or Allen, while other jurors based their verdicts on completely different acts.

We conclude, therefore, that counsel's failure to raise the election issue on appeal resulted in prejudice not only in case numbers 00-10554 and 00-10542, but also in case numbers 00-10545 and 00-10546, which entitles the petitioner to post-conviction relief from his convictions in those cases.

### III. Avenue of Relief

Both the petitioner and the State argue that a delayed appeal is not the appropriate avenue of post-conviction relief in this case, where the petitioner's counsel filed a timely motion for new trial and pursued a direct appeal and the petitioner made no request for a delayed appeal in his petition for post-conviction relief. We agree. "The remedies for a meritorious post-conviction claim are the vacating and setting aside of the judgment or the ordering of a delayed appeal." Monolito B. Cooper v. State, No. E2008-00718-CCA-R3-HC,

-17-

2009 WL 4823851, at *2 (Tenn. Crim. App. Dec. 15, 2009) (citing Tenn. Code Ann. § 40-30-111(a)). Tennessee Code Annotated section 40-30-111(a) provides that if the post-conviction court "finds that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable, including a finding that trial counsel was ineffective on direct appeal, the court shall vacate and set aside the judgment or order a delayed appeal as provided in this part[.]" Tenn Code Ann. § 40-30-111(a) (2006).

Tennessee Code Annotated section 40-30-113, "Petitioner unconstitutionally denied appeal; procedure," provides in pertinent part:

> (a) When the trial judge conducting a hearing pursuant to this part finds that the petitioner was denied the right to an appeal from the original conviction in violation of the Constitution of the United States or the Constitution of Tennessee and that there is an adequate record of the original trial proceeding available for a review, the judge can:
>
> (1) If a transcript was filed, grant a delayed appeal;
>
> (2) If, in the original proceedings, a motion for a new trial was filed and overruled but no transcript was filed, authorize the filing of the transcript in the convicting court; or
>
> (3) If no motion for a new trial was filed in the original proceeding, authorize a motion to be made before the original trial court within thirty (30) days. The motion shall be disposed of by the original trial court as if the motion had been filed under authority of Rule 59 of the Rules of Civil Procedure.

Id. § 40-30-113(a).

Additionally, Tennessee Supreme Court Rule 28, Section 9 provides in pertinent part as follows:

> **(C) Orders Granting Relief** – If the court finds that petitioner is entitled to relief, the court shall enter an order vacating and setting aside the judgment of conviction or sentence or an order granting a delayed appeal. The court shall also enter any other appropriate supplementary orders that may be necessary and proper.
>
> **(D) Grant of a Delayed Appeal** –

-18-

(1) By the Trial Court –

(a) Appeal as of Right Pursuant to T.R.A.P. 3 – Upon determination by the trial court that the petitioner was deprived of the right to file an appeal pursuant to T.R.A.P. 3, the trial court shall apply the procedures set out in Tenn. Code Ann. § 40-30-113.

(b) Appeal Pursuant to T.R.A.P. 11 –

(i) Upon determination by the trial court that the petitioner was deprived of the right to request an appeal pursuant to T.R.A.P. 11, the trial court shall enter an order granting the petitioner a delayed appeal, staying the post-conviction proceedings pending the final disposition of the delayed appeal, and providing that the order is final for purposes of appeal under this rule.

Tenn. Sup. Ct. R. 28, § 9(C), (D)(1)(a)-(b)(i) (2009).

In granting a delayed appeal, the post-conviction court relied on Wallace v. State, 121 S.W.3d 652 (Tenn. 2003), in which our supreme court held that a petitioner who received ineffective assistance of counsel due to counsel's failure to file a timely motion for new trial or to withdraw as counsel, which resulted in the waiver of all the petitioner's appellate claims other than the sufficiency of the evidence, was entitled to the delayed appeal he sought. Id. at 660. Observing that "the key issue is the failure of trial counsel to file the specified pleading resulting in the defendant being deprived of complete appellate review on direct appeal," id. at 659, the Wallace court concluded that counsel's failure either to file a timely motion for new trial or to withdraw as counsel was presumptively prejudicial, as it resulted in the petitioner's being "procedurally barred from pursuing issues on appeal" and the State's case not being "subjected to adversarial scrutiny upon appeal." Id. at 660.

As the petitioner here points out, his counsel filed both an appeal to this court and an application for permission to appeal to our supreme court. Moreover, the petitioner did not request a delayed appeal in his petition for post-conviction relief. Under such circumstances, we agree that the appropriate remedy for his meritorious post-conviction claim is to vacate his judgments of convictions in case numbers 00-10546, 00-10554, 00-10542, and 00-10545 and to remand for new trials for those offenses.

## CONCLUSION

Based on the foregoing authorities and reasoning, we conclude that the petitioner has shown that appellate counsel provided ineffective assistance by not raising the State's failure to elect offenses as an issue in his direct appeal, but he has not shown that counsel was ineffective for not challenging the consolidation of the indictments for trial or the order of

consecutive sentencing on the basis that the trial court failed to make the required <u>Wilkerson</u> findings. We further conclude that the appropriate remedy for the petitioner's meritorious claim of ineffective assistance is to vacate the convictions in which counsel's deficiency resulted in prejudice to the petitioner and to remand for new trials for those offenses. Accordingly, we reverse the judgment of the post-conviction court in part, vacate the petitioner's convictions in case numbers 10546, 10554, 10542, and 10545, and remand for new trials for those offenses.

_____
ALAN E. GLENN, JUDGE